# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NELSON ANCHERANI,         :
                                   :

        Plaintiff,         :
                                   :

    v.                 :     3:13-CV-02595
                               :     (Judge Mariani)

CITY OF SCRANTON, et al.,     :

        Defendants.    :

**FILED**
**SCRANTON**

AUG – 8 2014

PER_____
DEPUTY CLERK

### MEMORANDUM OPINION

## I.      Introduction

Presently before the Court is a Motion to Dismiss Plaintiff's Complaint (Doc. 8) filed by the Defendants in this wrongful termination lawsuit. For the reasons discussed below, the Court will deny the Motion. Specifically, Defendants' Motion cannot be granted because the factual allegations that Plaintiff alleges do support his causes of action for procedural due process and First Amendment violations. At the same time, however, a lack of clarity in Plaintiff's pleadings prevents a thorough analysis of the connection that certain defendants had to the causes of action alleged. Accordingly, the Court perceives that the only fair and expeditious method of resolving this lack of clarity as to the actors against whom Plaintiff's valid causes of action are alleged is to require Plaintiff, pursuant to Federal Rule of Civil Procedure 12(e), to file a more definite statement setting forth with clarity and specificity what actions the defendants against whom this suit is brought actually engaged in to give

rise to this cause of action, as well as which actions, as part of City custom or otherwise, might give rise to *Monell* liability against the City of Scranton.

## II. Factual Allegations and Procedural History

This action stems from Plaintiff, Nelson Ancherani's, termination from his employment as a police officer with the City of Scranton Police Department on November 7, 2011. (Compl., Doc. 1, at ¶ 11.) According to the Plaintiff, "[b]efore being terminated, [he] was not given notice of the charges against him, explanation of the evidence against him, or an opportunity to rebut such allegations, which are all required before Defendants can terminate an employee," as part of a Collective Bargaining Agreement which has not been submitted to the Court. (*Id.* at ¶ 13.) Nor was Plaintiff given a pretermination hearing, as also required. (*Id.* at ¶ 14.)

Plaintiff then filed this federal lawsuit, which alleges two Counts: Violation of the Constitutional Right to a Pretermination Due Process Hearing (Count I) and Retaliation for the Exercise of his First Amendment Freedoms of Speech, Petition, and Association (Count II).

In support of the second Count, Plaintiff pleads that he "was an active speaker at City Council meetings, discussing many topics of public concern, including but not limited to union issues, budgeting issues, and the administration." (*Id.* at ¶ 17.) In discouragement of this activity, "[t]he Police Chief wrote an email prohibiting such public speech and any 'opinions of agency' at City Council meetings" and threatened "any officer who publicly

disagrees, contradicts, or questions the operations of [the] agency." (*Id.* at ¶ 18.) Nonetheless, approximately two weeks before his termination, "Plaintiff, as a citizen, spoke at a City Council meeting and criticized the administration [*sic*] handling of the financial affairs of the City and union issues." (*Id.* at ¶ 19.)

Plaintiff was also the recording secretary for the Fraternal Order of Police "and was extremely active in [that] union." (*Id.* at ¶ 20.)  As part of his role in the union, "Plaintiff had approved the filing of an unfair labor practice . . . petition in or around April 2011 against the Police Chief for violating the Collective Bargaining Agreement and violating state law." (*Id.*) This petition "received wide news coverage" and was scheduled for a hearing approximately one week before Plaintiff's termination, though that hearing was continued. (*Id.* at ¶¶ 21-22.)  "Yet within less than a week from the scheduled [unfair labor practices] hearing, which dealt with the unfair labor practice that was approved by Plaintiff along with other union officials, Plaintiff was terminated." (*Id.* at ¶ 23.)

Named as Defendants in the Complaint were the City of Scranton, Plaintiff's employer, (*id.* at ¶¶ 1-2); Christopher Doherty, the Mayor of Scranton during the time in question, (*id.* at ¶ 3); and an "unknown additional decision maker," (*id.* at ¶ 4).  Plaintiff alleges that Doherty and the unknown additional decision maker both acted under color of state law to deprive him of his due process and First Amendment rights, (*id.* at ¶ 5), and that the City of Scranton failed to train its officials to avoid such conduct and "acquiesced in all actions taken by its public officials and personnel," (*id.* at ¶¶ 6-7).

3

Defendants then filed the present Motion to Dismiss, alleging that the Complaint should be dismissed on several different grounds, which are discussed below. (*See generally* Mot. to Dismiss, Doc. 8.)

## III. Standard of Review

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-1965 (internal citations and alterations omitted). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555, 127 S. Ct. at 1965. A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements."

4

*Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even if a "complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when a plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

5

## IV. <u>Analysis</u>

### a. Information Extraneous to the Pleadings

Much of Defendant's Motion to Dismiss hinges on the allegation that Plaintiff was seventy years old at the time of termination. (*See, e.g.*, Defs.' Br. in Supp. of Mot. to Dismiss, Doc. 12, at 7.)  According to Defendants, "[t]he gist of this matter is that the Plaintiff's employment ended when he turned 70 years of age in accordance with a plainly worded and long-standing Scranton City Ordinance that required Scranton City police officer's [*sic*] employment to end when he or she reaches the age of 70." (*Id.*)

In response, Plaintiff attaches a document to his Brief in Opposition that purports to be the decision of a labor arbitrator chosen by the City of Scranton and the Fraternal Order of Police to hear and decide a grievance filed by Plaintiff challenging his termination. (*See generally* Pl.'s Br. in Opp. to Mot. to Dismiss, Doc. 15, Ex. A.)  The arbitration purportedly resulted in Plaintiff's grievance being sustained with a remedy that required the City to reinstate Plaintiff to his former position without loss of seniority and with full back pay and benefits, less interim earnings. (*Id.* at 10.)

Neither the information provided by the Defendants nor the arbitration award provided by the Plaintiff is properly before the Court on a motion to dismiss.  "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."  *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  A "court may

6

consider an undisputedly authentic document that a *defendant* attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Id.* (emphasis added). Courts outside this Circuit have found that in "the atypical situation where plaintiffs submit extrinsic documents in their opposition to [defendant's] motion to dismiss . . . . if the extrinsic evidence is a part of the pleadings, it may be considered on a motion to dismiss." *See Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 122-23 (S.D.N.Y. 2010); *Adekoya v. Herron*, 2013 WL 6092507, at *3 (W.D.N.Y. 2013) (same).

None of the proffered information or documents falls into any of these exceptions. First, Plaintiff's age is not a matter of public record. *Cf. Pension Benefit*, 998 F.2d at 1197 (finding that, even if information is accessible to the public—in that case by a Freedom of Information Act request—but "potential obstacles exist when one seeks to" access it, it is not a public record for purposes of a motion to dismiss). Nor are Defendant's age-related allegations a part of the Complaint or relied on in any part of the Complaint. Rather, they are entirely extraneous to it. For the same reasons, the document attached to Plaintiff's Brief in Opposition does not contain information relied on in the Complaint, even though its date of decision (September 4, 2012) is from before the Complaint was filed (on October 18, 2013). Nor does it matter that Plaintiff's document, by restating his own age, could be considered an admission of Defendants' extraneous representations. Under *Pension Benefit*, *supra*, undisputedly authentic information submitted in support of a motion to

7

dismiss can only be considered if "the plaintiff's claims are based on" it. *Id.* at 1196.[1] "The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated where plaintiff has actual notice and has relied upon these documents in framing the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis added) (internal citations, alterations, and quotation marks omitted). Here, even if Plaintiff did have notice of Defendant's age- and ordinance-based justifications for termination, there is no evidence that he relied on that in framing the Complaint.

Accordingly, while this information might be important at summary judgment or at trial, it cannot be considered now. The Court notes, however, that if, in the development of this case, the record shows that the arbitration award attached to Plaintiff's Brief is authentic, final, and binding on the parties as a matter of their own collective bargaining agreement, and was either unappealed or sustained on appeal, then the arbitrator's ruling must govern the parties relationship on mandatory retirement. *Compare City of Erie v. Pa. Labor Relations Bd.*, 32 A.3d 625, 638 (Pa. 2011) (holding that "an employer's unilateral change to a mandatory subject of bargaining constitutes an unfair labor practice" and therefore a city cannot unilaterally change an ordinance affecting covered employees' benefits without bargaining with the union) *with* Arbitration Award, Sept. 4, 2012, Doc. 15, Ex. A, at 6-8 (finding City in violation of its collective bargaining agreement with the

---

[1] This is so even putting aside the obvious question of whether the factual representations raised

Fraternal Order of Police because the ordinance requiring the retirement of seventy-year-old police officers violates the law incorporated in the collective bargaining agreement that the City "cannot unilaterally, by ordinance or otherwise, impose a term or condition of employment that falls within the mandatory subjects of bargaining").  Grievance arbitration awards issued pursuant to the arbitration provisions of a collective bargaining agreement entered into under the authority of the Policemen and Fireman Collective Bargaining Act, Act 111, 43 P.S. § 217.1, *et seq.* are subject to an exceedingly narrow scope of review:

> We have recognized that Act 111 imposes a restraint on judicial activism to ensure swift resolution of disputes involving police and firemen personnel. *Pennsylvania State Police v. Pennsylvania State Trooper's Ass'n,* 540 Pa. 66, 656 A.2d 83 (1995).   The legislature's intent was to prevent Act 111 arbitration from being delayed by protracted litigation. *Id.*  Thus, in appeals regarding arbitration awards, our scope of review is in the nature of narrow *certiorari.*  *Id.*   Under this narrow scope of review, courts are limited to reviewing questions concerning: (1) the jurisdiction of the arbitrators; (2) the regularity of the proceedings; (3) an excess of the arbitrators' powers; and (4) deprivation of constitutional rights.

*Borough of Nazareth v. Nazareth Borough Police Association,* 680 A.2d 830, 833 (Pa. 1996).

In *Pennsylvania State Police, supra,* the Pennsylvania Supreme Court held that this same standard of review is applicable to both grievance and interest arbitration awards. *Pa. State Police,* 656 A.2d at 89.

Thus, the existence of the arbitration award, assuming its continuing validity, calls into question whether the City may properly raise the mandatory retirement at age 70

---

in Defendants' Brief can be considered a "document" under *Pension Benefit, supra.*

Ordinance as a defense to Plaintiffs' claims that he suffered retaliation for his alleged exercise of his First Amendment speech rights as well as his claims of violation of procedural due process, discussed below.  These questions, however, cannot be addressed as part of the resolution of the Defendants' Motion to Dismiss and must await the further development of this case.

With these considerations duly noted, the Court will now proceed to resolve the Motion to Dismiss only on the allegations contained in Plaintiff's Complaint, without taking into account the extraneous representations of Plaintiff's age, the City ordinance, or the arbitration award.

### b. Procedural Due Process[2]

First, Defendants argue that "Plaintiff's claim against the moving Defendants asserting a procedural due process violation fails under the facts alleged." (Doc. 12 at 9.) This argument, however, is based almost entirely on the proposition that, because Plaintiff was seventy years old at the time of termination, he could be fired without due process protections. For the reasons discussed above, such an argument, as it has been presented here, cannot even be considered on a motion to dismiss.

---

[2] Defendants interpret Plaintiff's Complaint as alleging violations of the substantive Due Process Clause. (*See generally* Doc. 12 at 10-14.) In his Opposition, Plaintiff disclaims any reliance on the substantive Due Process Clause. (Doc. 15 at 3 n.1.) Therefore, the Court concludes that, in terms of due process protections standing alone, only the procedural Due Process Clause remains at issue. Of course, substantive due process is still at issue insofar as it invokes the incorporation doctrine as part of Plaintiff's First Amendment claim.

"The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 576, 92 S. Ct. 2701, 2708, 33 L. Ed. 2d 548 (1972). "To have a property interest in a benefit, a person . . . must . . . have a legitimate claim of entitlement to it." *Id.* at 577.  This entitlement is established by "the existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* Once these rules and understanding create a property interest in continued public employment, "the Due Process Clause provides that [that interest] cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S. Ct. 1487, 1493, 84 L. Ed. 2d 494 (1985).  "While the legislature may elect not to confer a property interest in public employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards." *Id.* (quoting *Arnett v. Kennedy*, 416 U.S. 134, 167, 94 S. Ct. 1633, 1650, 40 L. Ed. 2d 15 (1974) (Powell, J., concurring in part)) (internal alterations omitted).  Therefore, a public employee with a property interest in continued employment "is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story," before he may be terminated. *Id.* at 546.

11

Scranton is a City of the Second Class A under the Pennsylvania Municipal

Corporations Code.  *See* City of Scranton Gen. Code § 30-1, *available at*

http://ecode360.com/11603824.  The Municipal Corporations Code provides:

> [N]o regularly appointed policeman or fireman in cities of the second class A,
> shall be removed or dismissed without his written consent, except by the
> decisions of court, either of trial or inquiry, duly determined and certified in
> writing to the mayor, which court shall be composed of three persons
> belonging to the police or fire force equal or superior in official position therein
> to the accused.

53 Pa. Cons. Stat. Ann. § 30471.  "The finding of the court of trial or inquiry, as aforesaid,

shall be of no effect until approved by the mayor . . . ." *Id.* at § 30474.

These strong protections clearly create a property interest in continued police

employment.  Moreover, even without this statutory protection, Plaintiff may have an

additional "constitutionally protected property interest based on the terms of the C[ollective]

B[argaining] A[greement]," *Dee v. Borough of Dunmore*, 549 F.3d 225, 230 (3d Cir. 2008),

to which he is allegedly subject, (*see* Compl. at ¶ 13); *see also Unger v. Nat'l Residents

Matching Program*, 928 F.2d 1392, 1397 (3d Cir. 1991) ("Today it is beyond dispute that a

contract with a state entity can give rise to a property right protected under the Fourteenth

Amendment.").  The Collective Bargaining Agreement has not been submitted to the Court

and may not be noticed on a Motion to Dismiss, so the Court cannot know at this time

whether the Agreement will in fact offer Plaintiff a constitutionally protected property interest.

*Cf. Unger*, 928 F.2d at 1397 ("[T]he Supreme Court has never held that every state contract

gives rise to a property interest protected under the Fourteenth Amendment.")  However, if

12

the Collective Bargaining Agreement entered into between Plaintiff and the City of Scranton is submitted to the Court in the course of subsequent proceedings—and it is shown that it confers seniority rights and/or protects Plaintiff from unjust discharge, or does not provide for a mandatory retirement at age 70, then such collectively-bargained contract rights would create a property interest in continued employment that would provide Plaintiff with due process protections against the kind of termination alleged here. *See, e.g., Dee*, 549 F.3d at 231-32 (finding protected property interest when CBA prevented plaintiff from being "disciplined or discharged" without just cause).

In conclusion, when the Court accepts the allegations contained within the four corners of the Complaint as true, as it must on a motion to dismiss, it finds that Plaintiff has adequately pleaded a deprivation of due process rights when he pleaded that he was employed by the City of Scranton as a police officer and was terminated without a due process hearing. This is based on the statutory provisions providing a police officer with protection from unilateral termination, though the fact that the Complaint alleges that Plaintiff is subject to a collective bargaining agreement provides some reason to believe that Plaintiff may enjoy additional contractual protections as well.

### c. First Amendment Retaliation

Defendants next seek dismissal of Plaintiff's First Amendment Retaliation claim. (Doc. 12 at 15.) The Third Circuit has stated:

> We analyze a public employee's claim of retaliation for engaging in protected activity under a three-step process. First, plaintiff must show that the activity

in question was protected. *Holder v. City of Allentown*, 987 F.2d 188, 194 (3d Cir. 1993); *Czurlanis v. Albanese*, 721 F.2d 98, 103 (3d Cir. 1983). To be protected the speech must be on a matter of public concern, and the employee's interest in expression on this matter must not be outweighed by any injury the speech could cause to the interest of the state as an employer in promoting the efficiency of the public services it performs through its employees. *Waters v. Churchill*, 511 U.S. 661, [668], 114 S. Ct. 1878, 1884, 128 L. Ed. 2d 686 (1994) (plurality opinion) (citing *Connick* [*v. Myers*], 461 U.S. [138,] 142, 103 S. Ct. [1684,] 1687[, 75 L. Ed. 2d 708 (1983)] and *Pickering* [*v. Bd. of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. [563,] 568, 88 S. Ct. [1731,] 1734[, 20 L. Ed. 2d 811 (1968)]).

Second, plaintiff must show that the protected activity was a substantial or motivating factor in the alleged retaliatory action. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S. Ct. 568, 576, 50 L. Ed. 2d 471 (1977). Finally, defendant may defeat plaintiff's claim by demonstrating by a preponderance of the evidence that the same action would have been taken even in the absence of the protected conduct. *Id.*

*Watters v. City of Philadelphia*, 55 F.3d 886, 892 (3d Cir. 1995). Furthermore, an action taken in retaliation for the exercise of First Amendment rights "'if intended to punish [a plaintiff] for exercising her free speech rights,' may be actionable if under the circumstances it would be sufficient to 'deter a person of ordinary firmness' from exercising his or her First Amendment rights." *O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d Cir. 2006) (quoting *Suppan v. Dadonna*, 203 F.3d 228, 234-35 (3d Cir. 2000)).

Again, Defendants' arguments for dismissal on this point rely almost entirely on information contained outside the Complaint, which the Court cannot consider at this stage. When the Court looks only at the information contained within the four corners of the Complaint, it finds sufficient factual allegations to survive a motion to dismiss. Taking as true the allegations that Plaintiff spoke publicly on matters of public administration, was

14

threatened (along with other police officers) against making such public statements, and was subsequently terminated shortly after making another public statement, it would appear that Plaintiff has met all three steps laid out in *Watters*—though this finding would be subject to revision if, after discovery, it appears that the issues on which Plaintiff spoke were not in fact "matters of public concern" as opposed to mere personal issues related to his individual employment, or, if they were matters of public concern, that the City possessed an adequate justification for treating Plaintiff, as an employee, differently than other members of the general public. *See Garcetti v. Ceballos*, 547 U.S. 410, 418, 126 S. Ct. 1951, 1958, 164 L. Ed. 2d 689 (2006) (identifying these considerations as the "two inquiries to guide interpretation of the constitutional protections accorded to public employment speech"). Moreover, the action of firing someone from the job that he held for forty-one years is certainly one that would "deter a person of ordinary firmness" from exercising his First Amendment rights. *Cf. id.* (noting that the "deterrence threshold" for First Amendment claims "is very low" and that "a cause of action is supplied by all but truly *de minimis* violations").

Accordingly, Defendant's motion will be denied on First Amendment retaliation grounds as well.

### d. Named Defendants

Aside from attacking the substance of Plaintiff's two Counts, Defendants also argue that each of the named parties is not a proper defendant in this action. As discussed below,

15

these arguments fail on their merits insofar as they claim that Plaintiff has not alleged valid

causes of action against the various Defendants.  But while the Court finds that Plaintiff has

alleged valid claims for violation of his procedural due process and First Amendment rights,

at the same time it also finds that Plaintiff fails to plead sufficient allegations to link the City

of Scranton and Mayor Doherty to these causes of action.

### i.  *City of Scranton*

Under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L.

Ed. 2d 611 (1978), "a municipality cannot be held liable *solely* because it employs a

tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a

*respondeat superior* theory." *Monell*, 436 U.S. at 691, 98 S. Ct. at 2036.  It may, however,

be liable on other bases, such as if it failed to train municipal employees to avoid

constitutional violations.  *See City of Canton v. Harris*, 489 U.S. 378, 380, 109 S. Ct. 1197,

1200, 103 L. Ed. 2d 412 (1989).  Nonetheless, "[w]here a plaintiff claims that the

municipality has not directly inflicted an injury," but rather relies on the alternative basis that

some failure to train on the part of the municipality caused an employee to inflict the injury,

"rigorous standards of culpability and causation must be applied to ensure that the

municipality is not held liable solely for the actions of its employee." *Id.* at 405, 117 S. Ct. at

1389.  Any such failure to train "must amount to 'deliberate indifference to the rights of

persons with whom the [relevant decisionmakers] come into contact'" in order to "'be

properly thought of as a city "policy or custom" that is actionable under § 1983.'"  *Connick v.*

16

*Thompson*, ___ U.S. ___, 131 S. Ct. 1350, 1359-60, 179 L. Ed. 2d 417 (2011) (quoting *City of Canton*, 489 U.S. at 388-89).

Here, all of the allegations against the City of Scranton are as follows:

Defendant, City of Scranton, failed to train its officials to provide due process right and not to retaliate against an employee who engages in free speech.

Defendant, City of Scranton, acquiesced in all actions taken by its public officials and personnel.

(Compl. at ¶¶ 6-7.)

Under the standards governing a motion to dismiss cited in Section III of this Opinion, Plaintiff's well-pleaded allegations of procedural due process and First Amendment violations require more than these unclear and conclusory statements to link them to a failure to train on the part of the City that could give rise to *Monell* liability. Accordingly, the Court will order Plaintiff to amend his Complaint to provide a more definite statement of how the City of Scranton actually engaged in a failure to train its employees to refrain from engaging in constitutional violations (or some other behavior) sufficient to state a claim under *Monell*.

### ii.  *Mayor Christopher Doherty*

Next, Defendants argue that Mayor Christopher Doherty should be dismissed from the Complaint for a variety of reasons.

Preliminarily, it appears that there is some confusion as to whether Mayor Doherty is being sued in his official or individual capacity. Defendants indicate at times that the

Complaint is alleged against him in his official capacity as Mayor of Scranton. (*See* Doc. 12 at 8.) However, the Complaint is only captioned as being against "Mayor Christopher Doherty, Individually." (Compl. at p. 1.) Its text then alleges that Doherty "engaged in official policy, custom, and decisions to deprive Plaintiff of his due process rights and free speech that culminated in his wrongful termination." (*Id.* at ¶ 5.) While this allegation is somewhat unclear, the Court interprets it as saying that Mayor Doherty himself engaged in actions that led to the deprivation of Plaintiff's rights. *Cf. Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985) ("Personal-capacity suits seek to impose personal liability upon a government official for *actions he takes* under color of state law.") (emphasis added). Thus, the Court finds that the Complaint as currently written is alleged against Mayor Doherty in his individual capacity.

However, there is no information in the Complaint to support the contention that Mayor Doherty was in fact personally involved in the termination, aside from Plaintiff's conclusory allegation that he was. (*See* Compl. at ¶ 5.) Therefore, as above, the Court will direct Plaintiff to amend his Complaint to add a more definite statement of Doherty's personal involvement in Plaintiff's termination or, in the alternative, to specify that Doherty is in fact being sued in his official capacity.[3] Moreover, if the Amended Complaint does not

---

[3] In requiring a more definite statement against Mayor Doherty, the Court believes that it has also adequately disposed of the arguments that Defendants raise for dismissing the claims of punitive damages against Doherty. (*See* Doc. 12 at 20-22.) Punitive damages may be awarded against a defendant acting in his personal capacity "in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S. Ct. 1625, 1640, 75 L. Ed. 2d 632 (1983). Not only has the

allege that Doherty was actually the person involved in the termination, then it should state who—known or unknown—was.

But aside from these deficiencies in the allegations against Mayor Doherty, Defendants also claim that Doherty is covered by various forms of immunity.  The Court will address the immunity arguments in this section so that the parties can better understand their relative positions as the litigation proceeds forward.

### 1.  Legislative Immunity

First, Defendants argue that Mayor Doherty's actions are protected by legislative immunity.  (Doc. 12 at 17.)  "[S]tate and regional legislators are entitled to absolute immunity from liability under § 1983 for their legislative activities."  *Bogan v. Scott-Harris*, 523 U.S. 44, 49, 118 S. Ct. 966, 970, 140 L. Ed. 2d 79 (1998).

But regardless of whether this principle would apply to a hypothetical legislator in a similar position to Mayor Doherty, the principle has no application to the case at hand. Mayor Doherty was a mayor at the time in question, and therefore was an executive official, not a legislator.  *Compare* "Legislator," *Black's Law Dictionary*, *available at* http://thelawdictionary.org/legislator/ (last accessed August 7, 2014) ("One who makes laws; a member of a legislative body.") *with* "Mayor," *id.*, *available at* http://thelawdictionary.org/mayor/ ("The executive head of a municipal corporation; the

---

current Complaint not shown that Doherty acted with evil motive or intent; it has not even shown that he "acted" at all.  Thus, at this stage, the issue of punitive damages is subsumed to the larger issue of whether the Complaint sufficiently connects Doherty to the well-pleaded constitutional violations alleged.  An

governor or chief magistrate of a city.").

Nor is it sufficient to argue, as Defendants do, (*see* Doc. 12 at 18), that Mayor Doherty may invoke legislative immunity because he was purportedly acting pursuant to an ordinance passed by the City Council that required termination of police officers older than seventy. Even if the Court were able to consider such information at the pleading stage, legislative immunity would only protect the *legislators* who passed that ordinance from being sued for their actions in passing it. It would not protect executive officials who later purported to act under the dictates of the ordinance.

Therefore, Mayor Doherty is not protected by legislative immunity.

### 2. Qualified Immunity

Next, Defendants argue that Mayor Doherty is covered by qualified immunity.

In deciding whether to grant qualified immunity, the Court must consider two questions: First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). Second, "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.* This latter requirement means that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 202, 121 S. Ct. at 2156 (quoting *Anderson v.*

---

Amended Complaint should also, of course, include sufficient information to show that Doherty acted with

*Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)).  If the answer to both questions is "yes," then there can be no qualified immunity.

However, the Third Circuit has cautioned that "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." *Newland v. Reehorst,* 328 Fed. App'x 788, 791 n. 3 (3d Cir. 2009).  It has likewise held that when a "complaint failed to disclose whether the defendants' actions did not violate a clearly established constitutional right, dismissal on qualified immunity grounds was premature." *Debrew v. Auman,* 354 Fed. App'x 639, 642 (3d Cir. 2009) (citing *Thomas v. Independence Twp.,* 436 F.3d 285, 291 (3d Cir. 2006)).

At this time, it appears that this case is one of the "vast majority of cases" where a determination of qualified immunity is inappropriate at the pleading stage.  Assuming that Plaintiff properly alleges facts connecting Mayor Doherty or another as yet unnamed defendant to the unlawful conduct complained of, it would then appear that Doherty or the other defendant terminated Plaintiff without a pretermination hearing and in retaliation for the exercise of his First Amendment rights, which satisfies *Saucier*'s first prong.  The Due Process protections of the Fourteenth Amendment and the freedoms of speech and association contained in the First Amendment are also "well-established" from centuries of jurisprudence, such that a reasonable person in the Defendant's position should have known that he would violate them if he denied their protections to the Plaintiff.

---

evil motive or intent if it intends to advance a punitive damages claim further in this litigation.

21

According, Mayor Doherty is not covered by qualified immunity at this stage of the proceedings. This does not mean that the Court would be unwilling to entertain a claim of qualified immunity after discovery has produced a fuller record to indicate what, if anything, Doherty actually did. But at this stage, granting qualified immunity would be immature.

       iii.   *"Unknown Additional Decision-Maker"*

Plaintiff also alleges his Complaint against an "unknown additional decision-maker" who "is an official with policy-making power for the City of Scranton." (Compl. at ¶ 4.) This unknown additional decision-maker allegedly acted along with Mayor Doherty to "deprive Plaintiff of his due process rights and free speech that culminated in his wrongful termination." (*Id.* at ¶ 5.)

Defendants argue that a Complaint cannot be alleged against a fictitious placeholder defendant and that the unknown additional decision-maker should therefore be dismissed. (Doc. 12 at 8.) But unlike the allegations against the City of Scranton and Mayor Doherty, the Court finds nothing inappropriate in the allegations against the unknown decision-maker.

"Use of John Doe [i.e., unknown named] defendants is permissible in certain situations until reasonable discovery permits the true defendants to be identified." *Blakeslee v. Clinton Cnty.*, 336 Fed. App'x 248, 250 (3d Cir. 2009) (citing *Klinger v. Yamaha Motor Corp., U.S.A.*, 738 F. Supp. 898, 910 (E.D. Pa. 1990)). At this early stage of the proceedings, the Court finds nothing inappropriate in Plaintiff's naming an unknown additional defendant who Plaintiff believes to be involved in his termination. If following

22

reasonable discovery, the unknown decision-maker cannot be identified, then his or her dismissal may become appropriate. But the Court cannot dismiss the "unknown decision-maker" before discovery has even commenced.

## V. Conclusion

For the reasons discussed above, Defendant's Motion to Dismiss (Doc. 8) is **DENIED**. A separate Order follows.

Robert D. Mariani
United States District Judge