IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NELSON ANCHERANI,

   Plaintiff,

v.

CITY OF SCRANTON, et al.,

   Defendants.

3:13-CV-02595
(Judge Mariani)

## MEMORANDUM OPINION

### I. Introduction

On August 8, 2014, this Court entered a Memorandum Opinion (Doc. 19) and Order (Doc. 20) by which it denied the Motion to Dismiss of the Defendants (Doc. 8) and afforded the Plaintiff 14 days "to file an Amended Complaint that provides a more definite statement of the City of Scranton and Mayor Christopher Doherty's involvement in the acts giving rise to this lawsuit, as explained more fully in the Court's accompanying Memorandum Opinion." (Doc. 20 at ¶ 2)

On August 22, 2014, the Plaintiff filed an Amended Complaint (Doc. 21). The Defendants responded with a Motion to Dismiss Plaintiff's Amended Complaint (Doc. 27), together with a Brief in Support of their Motion (Doc. 28).

Plaintiff filed a Brief in Opposition to the Motion to Dismiss his Amended Complaint (Doc. 29).

No reply brief was filed by the Defendants. This matter is, therefore, ripe for disposition.

For the reasons discussed below, Defendants' Motion to Dismiss will be denied. In denying the Defendants' Motion, however, the Court also finds that Plaintiff has failed to plead a cause of action for *Monell*[1] liability based on a claim of failure to train. Accordingly, paragraph 6 of Plaintiff's Complaint is stricken.

Further, because Plaintiff's claims that he was denied a pre-termination hearing (Count I) and retaliated against for his exercise of speech protected by the First Amendment (Count II) are sufficiently pleaded against Defendant Christopher Doherty and Defendant Paul Kelly as the acts of the City of Scranton official with final policy making authority (Defendant Doherty), and the act of the person to whom he delegated authority to act for the City (Defendant Kelly), Plaintiff has sufficiently pleaded causes of action against the individual Defendants under the First and Fourteenth Amendments and against the City of Scranton for *Monell* liability.

## II. Factual Allegations

The Plaintiff's allegations in his original Complaint are summarized in this Court's Memorandum Opinion denying the Defendant's Motion to Dismiss (*see* Doc. 19 at 2-4) and will not be restated here.

---

[1] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d. 611 (1978).

2

Plaintiff, in accordance with the Order of this Court denying Defendants' Motion to Dismiss, amended his Complaint. It is only those additional allegations to which the Court turns. The Court will not revisit the aspects of the Amended Complaint which were included in Plaintiff's first Complaint and therefore already addressed in the Court's previous Opinion.

The Plaintiff, in an effort to provide a more definite statement of Defendant Doherty's involvement in the acts giving rise to his lawsuit as required by this Court's Order (Doc. 20), has alleged in paragraph 3 of the Amended Complaint that Defendant Doherty "was the only policy-maker that could authorize an employee's termination, and therefore, he was personally involved in the firing of Plaintiff after 41 years of dedicated service to the City of Scranton, 53 P.S. § 30453." (Amended Complaint, Doc. 21, at ¶ 3).

The Plaintiff's Amended Complaint also names as a defendant Paul A. Kelly, Jr. and alleges that Kelly is "an official with decision-making power for the City of Scranton and at the time of the events had a principal office at 340 North Washington Avenue, Scranton, PA 18503." (*Id.* at ¶ 4).

The Plaintiff further alleges in his Amended Complaint that both Defendant Doherty and Defendant Kelly were acting under color of state law "when they engaged in official policy, custom, and decision to deprive Plaintiff of his due process rights and free speech that culminated in his wrongful termination." (*Id.* at ¶ 5).

Further, the Plaintiff has alleged in paragraph 16 that "Defendant Doherty being the only policy-maker that can effectuate a termination was personally involved in Plaintiff's

wrongful termination. Defendant Doherty also acquiesced in all actions of Defendant Paul A. Kelly, Jr., who recommended that Plaintiff be fired." (*Id.* at ¶ 16).

With respect to the Plaintiff's attempt to impose liability upon the City of Scranton by alleging a failure to train, Plaintiff added the following allegations to paragraph 6 in the Amended Complaint:

> Defendant, City of Scranton, provided no training to policy-making officials, human resource individuals or lawyers that before discharging an employee the City of Scranton must provide notice, explanation of the evidence, and an opportunity to rebut. Defendant, City of Scranton, provided no training to policy-making officials, human resource individuals or lawyers that a policeman's employment is controlled by the provisions within the Collective Bargaining Agreement regardless of any Ordinance in exist[ence]. Defendant, City of Scranton, provided no training to policy-making officials or department heads that a city employee as a citizen has a constitutional right to speak out on matter of public concerns without fear of retaliation.

(*Id.* at ¶ 6).

Finally, Plaintiff has amended his Complaint to allege that the City of Scranton acquiesced in all actions taken by its public officials "and personnel, including but not limited to Paul A. Kelly, Jr." (*Id.* at ¶ 7).

### III. Standard of Review

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

4

draw the reasonable inference that the defendant is liable for the misconduct alleged."

Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Twombly, 550 U.S. at 555, 127 S. Ct. at 1964-1965 (internal citations and alterations omitted). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555, 127 S. Ct. at 1965. A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ethypharm S.A. France v. Abbott Laboratories, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> Twombly and Iqbal require [a court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

Connelly v. Steel Valley Sch. Dist., 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the

5

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

However, even if a "complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id*.

## IV. Analysis

### a. Plaintiff's Failure to Train Allegations as a Basis for *Monell* Liability

As noted, in the preceding section of this Memorandum, the Plaintiff makes the following allegations in his Amended Complaint to support a claim of failure to train by the City of Scranton:

> Defendant, City of Scranton, failed to train its officials to provide due process rights and not to retaliate against an employee who engages in free speech. Defendant, City of Scranton, provided no training to policy-making officials, human resource individuals or lawyers that before discharging an employee the City of Scranton must provide notice, explanation of the evidence, and an opportunity to rebut. Defendant, City of Scranton, provided no training to policy-making officials, human resource individuals or lawyers that a policeman's employment is controlled by the provisions within the Collective Bargaining Agreement regardless of any Ordinance in exist[ence]. Defendant, City of Scranton, provided no training to policy-making officials or department

6

heads that a city employee as a citizen has a constitutional right to speak out on matter of public concerns without fear of retaliation.

(Am. Compl. at ¶ 6).

Plaintiff's allegations fail to state a claim of failure to train under the pleading standards set out in Section III of this Memorandum. In *Wood v. Williams*, 568 Fed. App'x 100 (3d Cir. 2014), the Court of Appeals affirmed the District Court's dismissal of the claim of the plaintiff therein who alleged that her employer, the Bethlehem Area Vocational-Technical School (BAVTS), "had a policy and/or custom . . . to inadequately screen during the hiring process and to inadequately train, retrain and/or supervise BAVTS employees . . . thereby failing to adequately discourage Constitutional violations on the part of BAVTS employees." *Wood*, 568 Fed. App'x at 103. "Wood also alleged that BAVTS 'did not require or demand appropriate in-service training of BAVTS employees, who were known to encourage or tolerate Constitutional violations' and failed to adopt policies to prevent its supervisory employees from violating the constitutional rights of those they supervised." *Id.* at 103-04.

"The District Court dismissed Wood's *Monell* claim because her complaint failed to identify an unlawful policy or custom and failed to identity an policymaker or decisionmaker responsible for the unlawful conduct alleged." *Id.* at 104.

The Court of Appeals affirmed, stating:

The District Court was correct in finding Wood's complaint allegations stated the elements of the cause of action and were insufficient. Simply paraphrasing § 1983 does not meet Rule 8's pleading requirements because

7

it fails to satisfy the rigorous standards of culpability and causation required to state a claim for municipal liability.

*Id.* (internal citations, alterations, and quotation marks omitted).

Further, the Court in *Wood* explained why the Plaintiff's failure to train allegations were fatally deficient:

> The complaint did not allege facts showing any particular or specific policy or custom, or how it allowed the claimed constitutional violation to occur, identifying the policymaker or decisionmaker, or showing prior notice through a pattern of similar constitutional violations. *See, e.g., McTernan [v. City of York]*, 564 F.3d at 658; *see also Thomas v. Cumberland Cnty.*, 749 F.3d 217, 226 (3d Cir. 2014) ("Liability cannot rest only on a showing that the employees could have been better trained or that additional training was available that would have reduced the overall risk of constitutional injury. [T]he causation inquiry focuses on whether the injury [could] have been avoided had the employee been trained under a program that was not deficient in the identified respect." (quotations omitted)).

*Id.* at 105.

The Court, quoted its decision in *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999), for the following proposition:

> [I]n order for a municipality's failure to train or supervise to amount to deliberate difference, it must be shown that (1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights..

*Id.*

The Court in *Wood* also noted that the Plaintiff's "did not allege any facts that could support an inference that the BAVTS was on notice of the risk of retaliation for First

8

Amendment protected speech by employees, and that it was deliberately indifferent to this risk." *Id.* at 106.

Here, the Plaintiff's allegations in his Amended Complaint of a failure to train its officials on the part of the City of Scranton do not allege any particular or specific policy or custom or explain how the City allowed the claimed constitutional violations at issue in this case to occur. Nor does it identify the policymaker or decisionmaker responsible for training or show prior notice though a patter of similar constitutional violations. The decision in *Wood* requires that the failure to train claim based on such deficient allegations be dismissed.

In *Williams v. Palmer*, Civ. No. 14-5797, 2015 WL 3884969 (E.D. Pa. Jun. 24, 2015), the District Court, following *Wood*, provided an opportunity for the plaintiffs to file an amended complaint to cure the deficiencies in their original failure to train claim but found the amended complaint still did not properly allege a failure to train claim. Thus, the Court wrote:

> The amended complaint alleges that Delaware County has failed to train, supervise, or discipline its employees on the issues of "consumption of alcohol while on duty, the unauthorized discharge of weapons and illegal detentions of citizens when no probable cause exists." Compl. ¶ 29. Plaintiffs have partially remedied their initial complaint by specifying the custom that allegedly caused their injuries, but plaintiffs have still not identified the relevant municipal decision maker responsible for the alleged policy decision not to train the Delaware County officers, nor alleged that the decision maker had knowledge of and acquiesced in the failure to train. Failure "to allege conduct by a municipal decisionmaker" is "fatal" to a *Monell* claim. *McTernan* [*v. City of York*], 564 F.3d [636,] 657; *Santiago* [*v. Warminster Twp.*], 629 F.3d [121,] 135 & n. 11 (noting that a plaintiff has "the obligation to plead in some fashion that [the decision maker] had final policy making authority, as that is a key element of a *Monell* claim").

9

*Id.* at *6.

For these reasons, the Plaintiff's failure to train allegations fail to state a claim for *Monell* liability and those allegations, set forth in paragraph 6, will be stricken. Plaintiff was given an opportunity to amend his original Complaint and the Amended Complaint continues to fail to state a claim. Therefore, the dismissal of the failure to train theory of liability shall be with prejudice, because it appears that any further amendment would be futile and would unfairly require Defendants to respond yet again to the same insufficient allegations.

Further, the Court notes that the individual Defendants named by the Plaintiff as having made and implemented the termination decision of the Plaintiff are alleged to be persons vested with final policy-making authority (in the case of Defendant Doherty) and decision-making authority (in the case of Defendant Kelly). Thus, to allow the failure to train theory of recovery to survive in the context of Plaintiff's overall Complaint would be to suggest that the persons responsible for the failure to train were Defendants Doherty and Kelly and the persons whom they failed to train were themselves. That is an unworkable and illogical interpretation of the failure to train theory of liability under *Monell* and, indeed, stands that theory of liability on its head.

### b. The sufficiency of the allegations against Defendant Doherty.

The Plaintiff has, however, sufficiently stated Defendant Doherty's involvement in the acts giving rise to this lawsuit and, in so doing, has also adequately stated a basis for *Monell* liability against the City.

In *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), the Court held that a single decision by an official with policy-making authority in a specific area could constitute official policy and be attributed to the municipality itself under certain circumstances. In *Pembaur*, a county prosecutor ordered local law enforcement officers to seize two witnesses who were believed to be inside the medical clinic of their employer, a physician who had been indicted for fraud concerning government payments for medical care provided to welfare recipients. The officers had authority to arrest the witnesses, but did not have a search warrant for the premises of the clinic. However, pursuant to the county prosecutor's order, they forcibly entered, breaking down the door and searched the clinic. *Pembaur*, 475 U.S. at 472-73.

With respect to whether *Monell* liability could be imposed upon the county and city for the actions of the county sheriff's deputies undertaken pursuant to the direction of the county prosecutor, the Court stated:

> *Monell* reasoned that recovery from a municipality is limited to acts that are, properly speaking, acts "of the municipality" – that is, acts which the municipality has officially sanctioned or ordered.
>
> With this understanding, it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances.

11

*Id.* at 480.

The Court explained that it was not only a decision by a properly constituted legislative body which could constitute "an act of official government policy," but also the acts of officials "whose acts or edicts may fairly be said to represent official policy." *Id.* (quoting *Monell, supra,* 436 U.S. at 694).

The Court in *Pembaur* stressed that "not every decision by municipal officers automatically subjects the municipality to § 1983 liability." *Id.* at 481.

> Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. *See, e.g., Oklahoma City v. Tuttle,* 471 U.S., at 822-824, 105 S. Ct., at 2435-2436. The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable. Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law.

*Id.* at 482-83.

The Court then held:

> [M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.

*Id.* at 483-84.

These principles were reaffirmed in Connick v. Thompson, 563 U.S. 51, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011). There, the Court, relying on Pembaur, summarized the basis upon which Monell liability may be imposed upon a municipality:

> Plaintiffs who seek to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused their injury. Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. These are "action[s] for which the municipality is actually responsible."

Connick, 563 U.S. at _____, 131 S.Ct. at 1359 (internal citations omitted).

In this case, the Plaintiff has alleged that Defendant Doherty was the only "policymaker" who "could authorize an employee's termination" and that he was "personally involved in the firing of Plaintiff." (See Am. Compl. at ¶¶ 3, 16.) Plaintiff also alleges that Defendant Doherty "acquiesced in all actions" of Defendant Kelly who, Plaintiff alleges, recommended that Plaintiff be fired. (Id. at ¶ 16.)

The Complaint identifies Defendant Doherty as the "Mayor of the City of Scranton." (Id. at ¶ 3.) Clearly, these allegations place Defendant Doherty in the position of an official responsible for establishing final policy and, specifically, final policy with respect to the issue of the Plaintiff's termination. As the Court noted in Pembaur, "whether an official had final policymaking authority is a question of state law." Pembaur, 475 U.S. at 483. The City of Scranton as a city of the Second Class A under Pennsylvania law, see generally 53 P.S. § 30101, et seq., identifies the mayor of the city as the official vested with final authority to approve the dismissal of a policeman based on the findings of a trial board convened in

accordance with Section 30471 of the Second Class A City Code. *See* 53 P.S. § 30474 ("The finding of the court of trial or inquiry, as aforesaid, shall be of no effect until approved by the Mayor . . . .)"[2]

Therefore, Plaintiff has adequately alleged that Defendant Doherty, as Mayor of the City of Scranton, was, at the time of the Plaintiff's discharge, the official "responsible for establishing final policy" with respect to matters of termination, including the Plaintiff's termination. Further, Plaintiff has adequately alleged the exercise of official authority by Defendant Doherty in connection with the decision to terminate him from employment.

With respect to Defendant Kelly, Plaintiff has alleged, *inter alia*, that "Defendant Doherty also acquiesced in all actions of Defendant, Paul A. Kelly, Jr., who recommended that Plaintiff be fired." (Am. Compl. at ¶ 16).

Plaintiff's allegations with respect to Defendant Kelly are sufficient at this stage of the proceedings to preclude dismissal. In *Hill v. Borough of Kutztown*, 455 F.3d 225 (3d Cir. 2006), the Court delineated the circumstances under which an individual's conduct implements official policy or practice:

> An individual's conduct implements official policy or practice under several types of circumstances, including when (1) the individual acted pursuant to a formal government policy or a standard operating procedure long accepted

---

[2] Plaintiff has attached as Exhibit A to his Brief in Opposition to the Defendants' Motion To Dismiss his Amended Complaint the Arbitration Award between the City of Scranton and Plaintiff's Union, the Fraternal Order of Police. (*See* Doc. 29-1). Because Plaintiff's Complaint does not rely upon this document, it will not be considered in support of Plaintiff's arguments in opposition to Defendants' Motion to Dismiss. *See, Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.")

within the government entity, (2) the individual himself has final policy-making authority such that his conduct represents official policy, or (3) a final policy-maker renders the individual's conduct official for liability purposes by having delegated to him authority to act or speak for the government, or by ratifying the conduct or speech after it has occurred.

Hill, 455 F.3d at 245.

Here, Plaintiff's allegation that Defendant Doherty acquiesced in the actions of Defendant Kelly and that it was Defendant Kelly who recommended that Plaintiff be fired sufficiently alleges both that Defendant Doherty, as a final policymaker, rendered Kelly's conduct official for liability purposes by delegating to him the authority to issue a recommendation with respect to the termination of the Plaintiff, as well as liability based on the ratification of Defendant Kelly's recommendation after it was issued.

Defendants' Motion to Dismiss Plaintiff's Amended Complaint will therefore be denied. The Court will, however, strike paragraph 6 of the Amended Complaint

A separate Order follows.

Robert D. Mariani
United States District Judge

15