## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NELSON ANCHERANI,** | : |
| | : |
| **Plaintiff,** | : |
| **v.** | : **3:13-CV-02595** |
| | : **(JUDGE MARIANI)** |
| **CITY OF SCRANTON, et al.,** | : |
| | : |
| **Defendants.** | : |

## MEMORANDUM OPINION

### I. INTRODUCTION

Presently pending before the Court is Defendants' "Motion for Extension of Time to Answer Plaintiff's Amended Complaint" (Doc. 37). Said motion includes a copy of Defendants' proposed "Answer & Affirmative Defenses to Plaintiff's Amended Complaint" (hereinafter "Answer"), as well as a certificate of non-concurrence indicating that Plaintiff opposes Defendants' Motion. Subsequently, Plaintiff filed a "Motion to Strike Untimely Motion for Extension" (Doc. 38) and a Brief in Support thereof (Doc. 39). Upon request of Defendants' Counsel, (see Letter, Doc. 46), oral argument was held on July 13, 2016. For the reasons set forth below, the Court will grant Defendants' "Motion for Extension of Time to Answer Plaintiff's Amended Complaint" (Doc.37).

### II. PROCEDURAL HISTORY

Plaintiff initiated the above-captioned matter on October 18, 2013, naming as Defendants the City of Scranton ("City"), then-Mayor Christopher Doherty, and an "unknown additional decision-maker." (Compl., Doc. 1). The City and Christopher Doherty then filed a

Motion to Dismiss (Doc. 8) on December 2, 2013. By way of Memorandum (Doc. 19) and Order (Doc. 20), the Court denied Defendants' Motion to Dismiss and ordered Plaintiff to file an Amended Complaint providing a more definite statement of the City and Christopher Doherty's involvement in the acts giving rise to the lawsuit. On August 22, 2014, Plaintiff filed an Amended Complaint (Doc. 21) against the City, then-Mayor Christopher Doherty, and Paul A. Kelly, Jr., who was alleged to be "an official with decision-making power for the City of Scranton." (Doc. 21 at ¶ 4). The City, Christopher Doherty, and Paul Kelly then filed a Motion to Dismiss Plaintiff's Amended Complaint (Doc. 27) on October 13, 2014. By way of Memorandum (Doc. 30) and Order (Doc. 31), the Court denied Defendants' Motion to Dismiss and struck Paragraph 6 from the Amended Complaint. Trial was scheduled for June 6, 2016. (Doc. 34). Upon Motion of Defendants (Doc. 35), trial was rescheduled to August 8, 2016. (Doc. 36). At no time following Plaintiff's filing of the Amended Complaint did the Defendants file an Answer to the Amended Complaint.

### III. STANDARD OF REVIEW

#### A. *Pioneer Factors* and Rule 6(b)(1)

Upon motion of a defendant after the time for filing an answer has expired, a district court may extend the deadline for filing an answer "for good cause . . . if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1). A finding of excusable neglect is "not limited to situations where the failure to timely file is due to circumstances beyond the control of the filer." *Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380, 391 (1993). The determination of whether a party's conduct is excusable neglect "is at bottom an

equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395. These circumstances "include . . . the danger of prejudice . . ., the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Drippe v. Tobelinski*, 604 F.3d 778, 785 (3d Cir. 2010) (citing *Pioneer*, 507 U.S. at 395).

## B. Entry of Default and Default Judgment

Also informing the Court's decision is the standard for granting default judgments under Federal Rule 55(b)(2).[1] "Three factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). With respect to the third factor, "culpable conduct" refers to "actions taken willfully or in bad faith." *Gross v. Stereo Component Systems, Inc.*, 700 F.2d 120, 124 (3d Cir. 1983). Similarly, when evaluating whether to set aside an entry of default for good cause under Federal Rule 55(c), courts in this Circuit use a "tripartite test" to determine whether such good cause exists. "This test requires the court to examine (1) whether the default was willful; (2) whether the setting aside of the default will

---

[1] The Court makes reference to the standards for granting default judgment and for setting aside an entry of default because, were the Court to deny Defendants' Motion to extend time, these standards would become immediately relevant to the proceedings. It appears that the Clerk of Court would be required to enter Defendants' default under Rule 55(a) should no Answer be filed. And, because Plaintiff's claims are not "for a sum certain or a sum that can be made certain by computation," Fed. R. Civ. P 55(b)(1), Plaintiff then "must apply to the court for a default judgment," *id.* at (b)(2). The Court also expects that it would be confronted with a motion from Defendants asking the Court to set aside the entry of default. Thus, the standards laid out in Sections III.B. of this memorandum opinion, which contain factors that overlap with the excusable neglect standard, are worth considering here.

prejudice the adversary; and (3) whether a meritorious defense is presented." *Dr. B.H. Ginsberg Associates Profit Sharing Plan v. Cohen*, No. CIV. A. 94-3861, 1995 WL 510286, at *1 (E.D. Pa. Aug. 24, 1995) (citing *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 96 (2d Cir. 1993) and *Feliciano v. Reliant Tooling Co.,* 691 F.2d 653, 656 (3d Cir. 1982)).

## IV. ANALYSIS

Under either the *Pioneer* test for determining the existence of excusable neglect or the standards for evaluating default judgment or entries of default – or even using Rule 60(b) which allows a court to relieve a party from a final judgment for mistake, inadvertence, surprise, or excusable neglect – there are two factors that are key to the disposition of the issue now before the Court: 1) prejudice to the Plaintiff; and 2) whether the Defendants' failure to file an answer was in bad faith or was willful.

### A. Prejudice

At oral argument, Plaintiff's Counsel asserted that she and her client were prejudiced because they were unaware of some of the defenses contained in the proposed Answer. Plaintiff's Counsel stated that, had Defendants' Answer been timely filed, the defenses contained therein might have caused her to add witnesses to her witness list for trial and that she is now precluded from doing so by the Federal Rules of Civil Procedure, to the detriment of her trial strategy. In particular, Plaintiff's Counsel asserted that she would have added witnesses with respect to the affirmative defense of qualified immunity; that is, to counter anticipated testimony from Defendant Kelly as to what he believed was a legal course of

4

conduct at the time of the events at issue in this case. (*See* Unofficial Tr. at 10:25-11:12, 18:24-19:1).

Plaintiff's arguments as to what constitutes prejudice are matters that can be easily remedied by affording her additional discovery and by postponement of the trial for a period of time sufficient to allow Plaintiff to complete such discovery. Nevertheless, in observing that Plaintiff's protestations can be remedied in this manner, the Court is not suggesting that Plaintiff in fact suffered prejudice, since 1) there are very few disputed facts for trial;[2] 2) all of the Defendants' defenses which they now ask the Court to allow them to assert in their Answer are defenses as a matter of law, which the Defendants raised in their successive motions to dismiss or which were otherwise known to Plaintiff, to wit:

Defendants' "First Defense" (Doc. 37 at 6) and "Second Defense" (Doc. 37 at 10) is that Plaintiff's Amended Complaint fails to set forth a cause of action against Defendants upon which relief can be granted. Inasmuch as this defense formed the basis of Defendants' First Motion to Dismiss under Rule 12(b)(6), Plaintiff has had notice of this defense. (*See* Doc. 37 at ¶¶ 2-7).

Defendants' "Third Defense" (Doc. 37 at 10) is that this Court lacks jurisdiction over the subject matter of Plaintiff's claims. Objections to subject-matter jurisdiction, however, may be raised at any time. When "a party, after losing at trial, may move to dismiss the case because the trial court lacked subject-matter jurisdiction," *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434-35 (2011), or may object "even if the party had previously acknowledged the trial

---

[2] For instance, at oral argument Defense Counsel admitted that Plaintiff did not receive a pre-termination hearing. (Unofficial Tr. at 9:2-9:8).

court's jurisdiction," *id.* at 435, Plaintiff simply cannot be prejudiced by Defendants' delayed assertion of this defense in their Answer.

Defendants' "Fourth Defense" (Doc. 37 at 11) is that Plaintiff has not been deprived of any right or privilege secured by the United States Constitution or any law of the United States. This is a conclusion of law and Plaintiff is not prejudiced by Defendants' inclusion of it in their Answer. Additionally, Defendants have previously asserted that the allegations in Plaintiff's original Complaint "fail to rise to the level of establishing any unconstitutional deprivation of any protected right of the Plaintiff . . . ." (Doc. 8 at ¶ 2).

Defendants' "Fifth Defense" (Doc. 37 at 11) and "Sixth Defense" (*id.*) assert that Plaintiff has failed to set forth a claim for punitive damages and that Plaintiff is prohibited from seeking the recovery of punitive damages against Defendants. To the extent that these assertions can be characterized as defenses rather than conclusions of law, Defendants have previously put Plaintiff on notice that they believe "any and all allegations of punitive damages asserted against Mayor Christopher Doherty . . . should be dismissed." (Doc. 8 at ¶ 7). Admittedly, these defenses were not asserted as to Defendant Kelly, although at the time of the filing of Defendants' first motion to dismiss, Kelly had not been identified as an actor in connection with the Plaintiff's claims.

Defendants' "Seventh Defense" (Doc. 37 at 11) asserts that Defendants have not violated the applicable Collective Bargaining Agreement in effect at the time of the events at issue in this case. The Court notes that Plaintiff has put of record in this matter an Arbitration Award dated September 4, 2012 finding the City in violation of its collective bargaining

agreement with the Fraternal Order of Police and, by extension, Plaintiff. (Doc. 15, Ex. 1). As the Court has previously noted, (*see* Mem. Op., Doc. 19 at 8), the arbitrator's opinion and award will govern the relationship between parties on the issue of mandatory retirement, although it has yet to be authenticated and admitted. Thus, Defendants' "Seventh Defense" is of no consequence to this case going forward.

Skipping ahead momentarily to Defendants' "Tenth Defense & Third Affirmative Defense" (Doc. 37 at 12), Defendants assert that Plaintiff's employment ended when he reached age 70 in accordance with the longstanding, plainly worded, simple provisions of an Ordinance of the City. Plaintiff can claim no unfair surprise as to this defense. In Plaintiff's Motion to Dismiss the Original Complaint (Doc. 8), Defendants asserted that Plaintiff's "employment with the City of Scranton Police Department had ended under an application of a long-standing and plainly worded City of Scranton Ordinance requiring police officer to retire at age 70." (Doc. 8 at ¶ 1; *see also* Doc. 8 at ¶¶ 2-3, 7). Indeed, the City's application of this Ordinance to Plaintiff is at the heart of this case and was the subject of the above-mentioned Arbitration Award, which was issued before the above-captioned matter was ever filed.

Defendants' "Eighth Defense & First Affirmative Defense" (Doc. 37 at 12) is that all actions taken by Defendants were privileged and Plaintiff's claims are barred by Defendants' absolute and/or qualified immunity. Defendants' "Ninth Defense & Second Affirmative Defense" (Doc. 37 at 12) is that Defendants acted in good faith and in accordance with the reasonable belief that their conduct was authorized and lawful. Defendants' "Eleventh Defense & Fourth Affirmative Defense" (Doc. 37 at 12) is that Plaintiff's claims are barred

because the actions of Defendants at all times were performed in the public interest and to promote and protect public safety and perfect the proper operation of a government office. "The doctrine of qualified immunity shields government officials who perform discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). As such, Defendants' "Ninth Defense & Second Affirmative Defense" and "Eleventh Defense & Fourth Affirmative Defense" also go toward the defense of qualified immunity and the Court groups them together with the "Eighth Defense & First Affirmative Defense" for purposes of analysis. Defendants have clearly put Plaintiff on notice that they believe qualified immunity to be a defense as to Plaintiff's allegations against former-Mayor Doherty. (Doc. 8 at ¶ 6) ("The Defendant, Mayor Doherty, is protected under the doctrine of qualified immunity under the law of 42 U.S.C. § 1983 and is therefore immune from suit."). The Court has previously addressed the question of immunity for Defendant Doherty. (Mem. Op., Doc. 19 at 19-22). Plaintiff is not prejudiced by Defendants' assertion of this defense as to Mayor Doherty.

As was pointed out at the hearing on Defendants' Motion to extend time, the assertion of qualified immunity as to Defendant Kelly was not specifically raised by Defendants in their motions to dismiss. (*See* Unofficial Tr. at 23:10-24:8). Critically, however, the defense of qualified immunity was raised with respect to former Scranton mayor Christopher Doherty. *See supra*. It is but a short step from the assertion of qualified immunity as to Defendant

8

Doherty to its application to Defendant Kelly, whom Plaintiff chose not to identify in his original

Complaint (Doc. 1) and who, as an individual to whom then-Mayor Doherty is alleged to have

delegated decision-making authority, would obviously be someone to whom the defense of

qualified of immunity would be available. *Cf. Eddy v. Virgin Islands Water & Power Auth.*, 256

F.3d 204, 210 (3d Cir. 2001) ("[T]he defense of qualified immunity is not necessarily waived by

a defendant who fails to raise it until the summary judgment stage. Instead, the District Court

must exercise its discretion and determine whether there was a reasonable modicum of

diligence in raising the defense . . . [and] whether the plaintiff has been prejudiced by the

delay.") (citing *Guzman-Rivera v. Rivera-Cruz*, 98 F.3d 664, 667 (1st Cir. 1996) ("Because the

doctrine of qualified immunity recognizes that litigation is costly to defendants, officials may

plead the defense at various stages in the proceedings," including in a motion to dismiss, a

motion for summary judgment, and at trial.)).

Having run through the defenses contained in Defendants' Answer, the Court finds no

prejudice to Plaintiff. Indeed, the Court notes that Plaintiff did not raise or otherwise contest

the Defendants' failure to file an answer prior to Defendants' Motion seeking leave to file a late

answer. This suggests that Plaintiff and his Counsel perceived no prejudice from the lack of

an answer, particularly where this case was previously scheduled to go to trial on June 6, 2016

and was only rescheduled on April 28, 2016. And, as mentioned above, any prejudice can be

easily remedied by affording Plaintiff additional discovery and by postponement of the trial for a

period of time sufficient to allow Plaintiff to complete such discovery, which, out of an

abundance of caution, the Court is prepared to allow, should Plaintiff desire it. Plaintiff's

Counsel asserted at oral argument that prohibiting Defendants from filing an answer "makes [her] case much easier." (Unofficial Tr. at 10:20). Indeed, Plaintiff's Counsel envisions as just and proper what the Court would call a farce of a trial, should Defendants be prohibited from answering:

> **The Court:** Let's assume for a moment that I were to deny the Motion to Extend the time for filing an answer and allow an answer to be filed. If I were to deny that motion, what, in your mind, what happens next?
>
> **Plaintiff's Counsel:** I present my evidence at trial and I win.

(Id. at 12:14-12:18). Lest it be missed in the midst of this opinion, the Court wishes to emphasize the seriousness of its following statement: This not a game; litigation and trial were never intended to be vehicles for avoiding a resolution of the matter on the merits. Courts in this Circuit have a strong preference for deciding cases on their merits. U.S. v. $55,518.05 in U.S. Currency, 728 F.2d 192, 194-95 (3d Cir. 1984) ("[T]his court does not favor entry of defaults or default judgments. We require doubtful cases to be resolved in favor of the party moving to set aside the default judgment so that cases may be decided on their merits.") (internal quotation omitted). The Court finds that any prejudice that the Plaintiff may have suffered is, at most, minimal and, more important, remediable by providing Plaintiff with additional time for discovery and the option of postponing the trial for that purpose should he wish to do so.

## B. Bad Faith or Willfulness

The reason for the delay in filing an answer appears to be occasioned solely by factors within the control of Defendants' Counsel. He asserts that his failure to file an answer in a

10

timely fashion was the result of "mere oversight on [his] part" and that "it was not done

intentionally, [and] it was not done in bad faith whatsoever." (Unofficial Tr. at 8:6-8:7). When

asked to give her best argument that Defendants' Counsel acted willfully or in bad faith,

Plaintiff's Counsel asserted that the defenses in the Answer are "raised at the eleventh hour,

and [Defendants' Counsel] has provided this Court with absolutely no unusual or unique

circumstances that would justify allowing a defendant this substantial amount of time." (*Id.* at

24:14-24:23). Plaintiff's Counsel also emphasized that the Answer was not "a week" overdue,

but rather "several months." (*Id.*). According to Plaintiff's Counsel, Defendants' Counsel "had

many opportunities to file" an answer and "show[ed] bad faith because [he] didn't move, at any

time, and it's over a year, year and a half." (*Id.* at 25:3-25:10).

That the defenses set forth in Defendants' proposed Answer have already been set

forth in its two motions to dismiss or are otherwise irrelevant to the disposition of this case

"lends credence to Defendants' position that their failure to file within the allotted time period

was an honest oversight and not part of a sinister, well-conceived plan to frustrate [Plaintiff]'s

discovery efforts." *Kimberg v. Univ. of Scranton*, 411 F. App'x 473, 478 (3d Cir. 2010). The

Court notes that Defendants are quite late in filing an answer, but the Court does not find the

length of the delay standing alone to be indicative of bad faith in this case. Defendants'

Counsel has at all times shown himself to be a competent litigator thoroughly engaged in the

defense of this case, as evidenced by his filing of two motions to dismiss and his attention to

other deadlines. (*See, e.g.*, Mot. for Ext. of Time to File Ans., Doc. 6; Mot. to Ext. Time for 30

days to Resp. to Pl.'s Am. Compl., Doc. 24). Defendants' Counsel also asserts that

11

"[i]mmediately upon discovering there had not been an answer filed, [he] immediately filed a

motion requesting an extension of time," (Unofficial Tr. at 26:2-26:4), a representation which

the Court finds credible. The Court finds that Defendants' Counsel did not willfully fail to file an

answer to the Amended Complaint and that he did not act in bad faith.

### C. Impact of Delay on Judicial Proceedings

In exercising its duty to consider "all relevant circumstances surrounding the party's

omission," the Court is cognizant of "the length of the delay and its potential impact on judicial

proceedings." *Pioneer*, 507 U.S. at 395. Defendants' delay in filing an answer is lengthy and

may have the effect of postponing the impending trial in this case, which was initiated in 2013

and has already seen a jury trial rescheduled. While it is regrettable that the case may remain

pending for a longer period of time due to Defendant's delay in filing an answer, this case is far

from the oldest case continuing to make its way through the federal trial courts. The Court

thinks the costs of an additional, minimal delay – if Plaintiff chooses to conduct additional

discovery – occasioned by allowing Defendants to file its proposed Answer is far outweighed

by this Circuit's preference for deciding matters on their merits. *See $55,518.05 in U.S.*

*Currency*, 728 F.2d at 194-95.

## V. CONCLUSION

For the foregoing reasons, the Court will grant the Defendants' Motion for Extension of Time to Answer Plaintiff's Amended Complaint (Doc. 37) and allow Plaintiff the opportunity to postpone trial and take additional discovery.  A separate Order follows.

Robert D. Mariani
United States District Judge